**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TRIAGE CONSULTING GROUP, INC., | : | CIVIL CASE |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| IMPLEMENTATION MANAGEMENT | : | |
| ASSISTANCE, INC., et al.. | : | |
| Defendants. | : | NO. 12-4266 |

**AMENDED MEMORANDUM RE: DEFENDANTS' MOTION TO
PARTIALLY DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Baylson, J.                                                                                          July 11, 2013

## I.    Introduction

On July 26, 2012, Plaintiff Triage Consulting Group, Inc. ("Plaintiff") filed an action against Binoy Nazareth ("Nazareth") and Mantis Software Solutions LLC ("Mantis") for replevin and claiming misappropriation of trade secrets. On November 16, 2012, Plaintiff filed an Amended Complaint (ECF 6) adding as Defendants Implementation Management Assistance, Inc. ("IMA") and Sarah Lewis ("Lewis"). Plaintiff also dropped its replevin claim and added claims for breach of contract, intentional interference with contractual relations, and unfair competition. On February 12, 2013, Plaintiff filed a Second Amended Complaint (ECF 18), dropping its claims against Nazareth and Mantis, as well as its claim for unfair competition. As it now stands, Plaintiff brings claims for:

1. Misappropriation of trade secrets, in violation of the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 Pa. Cons. Stat. Ann. §§ 5301 et seq., against IMA and Lewis ("Defendants"),

2. Breach of contract against Lewis, and

3. Intentional interference with contractual relations against IMA.

Currently before the Court is Defendants' Motion to Dismiss Plaintiff's claims against Lewis and its intentional interference with contractual relations claim against IMA (the "Motion"). For the reasons below, Defendants' Motion is DENIED.

## II. Facts Pled by Plaintiff

Plaintiff is in the business of providing reimbursement and consulting services to healthcare institutions. More specifically, Plaintiff assists healthcare institutions with underpayment recovery, i.e., obtaining full payment for services when those payments are supposed to come from third-party payers.

Plaintiff has invested well over one million hours developing what it calls a "proprietary recovery and resolution process," which includes propriety computer software, database applications and files, payment modeling spreadsheets, as well as sundry strategies, knowledge, and expertise. Of particular importance to this case is Plaintiff's database known as Trakker, which Plaintiff developed internally and is instrumental to its business operations. In order to prevent competitors from learning about Trakker and the other aspects of its proprietary business operations, Plaintiff maintains a culture of confidentiality, including limiting access to information and requiring employees to sign confidentiality agreements.

IMA is a direct competitor of Plaintiff. In December 2011, IMA hired Liana Hans ("Hans"), Plaintiff's former employee of approximately fourteen years. While working for Plaintiff, Hans had access to Plaintiff's proprietary information and process, including the Trakker database. Hans had signed a confidentiality agreement during her employment, and another, similar agreement when she left Plaintiff's employ.

In derogation of both of these agreements, Hans shared with IMA Plaintiff's proprietary information and processes, including the entire Trakker database. Hans also recruited Lewis, another of Plaintiff's former employees, for the purpose of assisting IMA to take advantage of

2

Plaintiff's proprietary information and processes and disclosed to her that IMA intended to steal Plaintiff's clients. Lewis had signed a confidentiality agreement while working for Plaintiff.

IMA then had Hans and Lewis assist in developing a new database based on Trakker. IMA specifically wanted Lewis to work on this project because Lewis was familiar with Plaintiff's proprietary business operations. IMA tried to hide its misappropriation of Trakker by removing from its new database any reference to Plaintiff or the name Trakker.

On April 20, 2012, Plaintiff notified IMA that it believed that IMA possessed its proprietary information. IMA agreed to an investigation and, if any of Plaintiff's information was found on its systems, to remove it. IMA also agreed to pay for the investigation and the data removal.

On April 30, 2012, before the agreed upon investigation, Lewis notified Hans that IMA's systems contained Plaintiff's proprietary information. At Lewis's suggestion, IMA tried to delete the information. The subsequent, agreed upon investigation, however, revealed that IMA's systems contain significant amounts of Plaintiff's proprietary information.

As a result of the investigation, IMA terminated Hans. IMA, however,

1. Refuses to delete all of Plaintiff's proprietary information on its systems, in particular the information contained in IMA's new database, which IMA developed using Plaintiff's Trakker database;

2. Refuses to pay for the investigation and data removal; and

3. Still employs Lewis, who continues to help IMA compete with Plaintiff.

## III. Legal Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). Courts must accept as true

all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Iqbal clarified that the Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), which required a heightened degree of fact pleading in an antitrust case, "expounded the pleading standard for 'all civil actions.'" 555 U.S. at 684.

Iqbal explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Id. at 678, 685. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing Twombly, 550 U.S. at 556 n.3)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

## IV.     Discussion

Defendants contend that Plaintiff's PUTSA claim against Lewis should be dismissed because Plaintiff fails to allege facts that, even if true, could establish that Lewis engaged in misappropriation as that term is defined in section 5302 of the PUTSA. Defendants also contend

that Plaintiff's claims for breach of contract against Lewis and intentional interference with contractual relations claim against IMA should be dismissed because they are preempted by PUTSA. The Court disagrees.

### A. Plaintiff Pled Facts Sufficient to Support a Reasonable Conclusion that Lewis's Conduct Amounts to Misappropriation under the PUTSA.

Under subsections (1)(ii)(A) and (C) of section 5302 of the PUTSA, misappropriation includes:

1. "[U]se of a trade secret of another without express of implied consent,"

2. "[B]y a person who . . . at the time of . . . use, knew or had reason to know,"

3. "[T]hat [her] knowledge of the trade secret was:"

   a. "[A]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or"

   b. "[D]erived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use."

According to Defendants, Plaintiff alleges only that Lewis had knowledge of or "acquiesced in Hans'[s] improper use of [Plaintiff's] information," neither of which amounts to misappropriation under the PUTSA. Review of Plaintiff's Second Amended Complaint, however, reveals allegations sufficient to support the reasonable conclusion that Lewis knew, or should have known, that she uses Plaintiff's proprietary information in the regular course of her employment with IMA.

Plaintiff alleges that Lewis:

1. Knew that

   a. Plaintiff endeavors to maintain the secrecy of its proprietary information,

   b. IMA wanted her to help steal Plaintiff's clients, and

   c. IMA possessed Plaintiff's proprietary information, at least as of April 30, 2012;

2. Assisted IMA in its creation of a new database that helps IMA compete with Plaintiff; and

3. Currently works for IMA, helping IMA to compete with Plaintiff.

These allegations, if true, would support the reasonable conclusions that:

1. Lewis knew or had reason to know that she was using Plaintiff's proprietary information to assist IMA in the creation of its new database[1]; and

2. At least as of April 30, 2012, Lewis knew, or had reason to know, that, in the ordinary course of her duties at IMA, she uses Plaintiff's proprietary information, and that whoever divulged that information had a duty of secrecy to Plaintiff.

This is sufficient to satisfy the definition of misappropriation under section 5302 of the PUTSA.

  **B. Plaintiff's Breach of Contract and Intentional Interference with Contractual Relations Claims Are Not Preempted by the PUTSA.**

  The PUTSA generally preempts "tort, restitutionary[,] and other [Pennsylvania law] providing civil remedies for misappropriation of a trade secret." 12 Pa. Cons. Stat Ann. § 5308(a). However, the PUTSA does not preempt "contractual remedies, whether or not based upon misappropriation of a trade secret," and "other civil remedies that are not based upon misappropriation of a trade secret." Id. § 5308(b).

  By its express terms then, the PUTSA does not preempt Plaintiff's breach of contract claim against Lewis, regardless of whether it is based on Lewis's alleged misappropriation of Plaintiff's trade secrets. Youtie v. Macy's Retail Holding, Inc., 626 F. Supp. 2d 511, 520-23

---

[1] While Plaintiff does not clearly allege that Lewis knew that IMA was developing its new database using a copy of Trakker provided by Hans, given the alleged similarity of purpose between the two databases and Lewis's alleged knowledge that IMA wanted to steal Plaintiff's clients, it is perfectly reasonable to infer that Lewis knew or should have known that she was using Plaintiff's proprietary information to help create IMA's new database.

6

n.11 (E.D. Pa. 2009) (breach of contract claim explicitly excluded from PUTSA's preemption, though other claims based on the same conduct giving rise to the breach of contract claim, such as unfair competition, could be preempted).[2]

Regarding Plaintiff's intentional interference with contractual relations claim against IMA, tort claims and PUTSA claims are properly pled in the alternative, even though the tort claims may ultimately be deemed preempted pursuant to a factual finding that the information underlying the dispute is, in fact, a trade secret. Defendants have not conceded that Plaintiff's confidential information qualifies for trade secret status, and the Court will not force Plaintiff to choose between pleading a PUTSA claim and a tort claim with this issue outstanding. See Kimberton Healthcare Consulting, Inc. v. Primary PhysicianCare, Inc., Civil Action No. 11-4568, 2011 WL 6046923, at *5 (E.D. Pa. Dec. 6, 2011) ("The vast majority of courts to have addressed whether PUTSA preempts common law tort claims on a motion to dismiss have determined that such a determination is inappropriate . . . .") (Baylson, J.); EXL Labs., 2011 WL 880453, at *8 (agreeing "with the cases holding that PUTSA does not preempt common law torts before the court has determined whether the misappropriated information constitutes a trade secret"); Council for Educ. Travel, USA v. Czopek, 2011 WL 3882474, at *7 n.4 (M.D. Pa. Sept. 2, 2011) ("PUTSA will only preempt Plaintiff's claim for tortious interference if the alleged

---

[2] Defendant's citation to the allegedly contrary case, On-Line Technologies v. Bodenseewerk Perkin-Elmer, 386 F.3d 1133 (Fed. Cir. 2004) is incorrect. First, On-Line Technologies addressed the Connecticut Uniform Trade Secrets Act ("CUTSA"), which contains materially different preemption language than the PUTSA: under the CUTSA, "[c]ontractual . . . relief" is only exempted from preemption to the extent "that [it] is not based upon misappropriation of a trade secret." Conn. Gen. Stat § 35-57 (emphasis added). Second, On-Line Technologies affirmed the district court's ruling on the basis that the protection afforded the plaintiff by the contract and the protection provided by CUTSA were coextensive, such that if "no reasonable jury could find a CUTSA violation . . . there could be no breach of contract, either." Id. at 1145-46. Thus, On-Line Technologies does not support the proposition that breach of contract claims are preempted by the PUTSA.

confidential information at issue is determined by the court to be a trade secret.  Such a determination would require the court to resolve questions of fact, determinations which are not appropriate for resolution at this stage of the proceedings"); see also Youtie, 626 F. Supp. 2d at 511 (it is inconsistent to argue both preemption and that PUTSA claims fail because the information in question is not a trade secret (citing Cenveo Corp. v. Slater, Civil Action No. 06-CV-2632, 2007 WL 527720, at *3 (E.D. Pa. Feb. 12, 2007) (Golden, J.) ("the cases holding that the Trade Secrets Act does not preempt common law tort claims when it has yet to be determined whether the information at issue constitutes a trade secret take the better approach"))).

**V.     Conclusion**

Defendants' Motion is DENIED.  An appropriate Order follows.

O:\Matt12\12cv4266 - Triage Consulting Grp. v. IMA\12cv4266. Memo re Mot. to Partially Dismiss 2d Am. Compl. [6.19.13].docx